# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**LOCAL 7-0018, PAPER,
ALLIED-INDUSTRIAL,
CHEMICAL AND ENERGY
WORKERS (PACE) INTERNATIONAL
UNION, AFL-CIO, CLC,**

           **Plaintiff,**

**v.**                                     **Case No. 03-C-1446**

**WISCONSIN GAS COMPANY, d/b/a
WE ENERGIES,**

**and**

**WISCONSIN ELECTRIC POWER
COMPANY, d/b/a WE ENERGIES,**

**and**

**INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL UNION
NO. 2150, AFL-CIO,**

           **Defendants.**

---

# DECISION AND ORDER

---

The Plaintiff, Local 7-0018, Paper, Allied-Industrial, Chemical and Energy Workers

International Union ("PACE") brought this action under Section 301 of the Labor-

1

Management Relations Act ("LMRA") against the Wisconsin Gas Company ("Gas Company"), the Wisconsin Electric Power Company ("Electric Company") (collectively "WE Energies"), and the International Brotherhood of Electrical Workers, Local No. 2150 ("IBEW"). PACE seeks to set aside an arbitration decision arising from the collective bargaining agreement between WE Energies and IBEW, and to compel tripartite arbitration between IBEW, WE Energies, and PACE. PACE argues that the arbitration between WE Energies and IBEW necessarily involved PACE because the dispute centered on whether PACE or IBEW would represent certain job positions.

PACE, IBEW, and WE Energies filed motions for summary judgment. All of the parties agree that the material facts of this case are undisputed. Thus, the Court will enter judgment as a matter of law.

## FACTS

PACE is a labor union that traditionally represented production and maintenance workers of the Gas Company. (Stipulation of Facts ("SOF") ¶ 7.) IBEW is a labor union that historically represented production and maintenance employees of the Power Company, a subsidiary of Wisconsin Energy Corporation ("Wisconsin Energy"). (*Id.* ¶ 3.) In the spring of 2000, Wisconsin Energy acquired the Gas Company (the "Merger"). (*Id.* ¶ 14.) After the Merger, the Gas Company and the Power Company sought to integrate themselves into a single service utility operating under the trade name "WE Energies." (*Id.* ¶ 4.)

2

The Gas Company and PACE have been parties to a series of sequential collective bargaining agreements ("CBA"). (*Id.* ¶ 9.) Their current CBA, covering the period from June 1, 2002, through May 31, 2007 (the "PACE CBA"), (*Id.* ¶ 9) makes PACE the exclusive representative of all "employees performing production and maintenance work." (Pl.'s Findings of Fact ("PFOF") ¶ 10.) The PACE CBA provides a grievance and arbitration procedure for settling differences related to "the meaning and application of the provisions of [the] contract." (SOF ¶ 9, Ex. A, at 21.) The PACE CBA does not have a work jurisdiction dispute provision. That is, the PACE CBA provides no mechanism or guidance for determining which competing union would represent a particular job position.

Like the Gas Company and PACE, the Power Company and IBEW have been parties to a series of sequential CBAs, with their most current agreement covering the period from August 23, 2001, through August 15, 2004 (the "IBEW CBA"). (*Id.* ¶ 10.) The IBEW CBA provides for a grievance procedure, which allows arbitration for disputes "relating to the employee's job performance, assignment of work, overtime, or other matters which may arise from day to day." (*Id.* ¶ 10, Ex. B, at 12.) Like the PACE CBA, the IBEW CBA does not contain a work jurisdiction dispute provision.

After the Merger, WE Energies negotiated with IBEW and PACE in an effort to reach an agreement on the allocation of jobs to represented employees of the two unions. (*Id.* ¶ 13.) WE Energies reached an agreement with IBEW (the "IBEW Letter Agreement"), but not with PACE. (*Id.* ¶ 13.)

3

The IBEW Letter Agreement provided that if "there is not comparable work across unions, vacancies will be posted in the union that originally represented the employees." (*Id.* ¶ 14, Ex. C, at 1.) However, it also provided that if "there is comparable work across bargaining units at a location, vacancies will be posted within the bargaining unit that has historically represented employees performing that work at the location where the bargaining units have been co-located." (*Id.* ¶ 14, Ex. C, at 2.) IBEW also reserved "its right to grieve where it disagrees that the bargaining unit for which the Company intends to post future vacancies has historically performed comparable work." (*Id.* ¶ 14, Ex. C, at 2.)

In late 2002, a union jurisdiction dispute arose that necessitated the application of the IBEW Letter Agreement. Prior to the Merger, the Power Company and the Gas Company each had their own main facility. The Power Company's main facility was called Metro South, and IBEW represented the fleet operation employees there. (*Id*. ¶ 11.) The Gas Company's main facility was the North Service Center ("NSC"), and PACE represented the employees at NSC. (*Id*. ¶ 12.) In early 2002, as the Power and Gas Companies sought to integrate themselves into WE Energies, they closed Metro South and moved the fleet operation employees to NSC. (*Id.* ¶ 15.) The transferred fleet operation employees remained members of IBEW. However, a dispute arose between WE Energies and IBEW over which union would represent the positions once the current IBEW employees vacated them. (*Id.* ¶ 20.)

4

Unable to resolve their dispute, IBEW filed a grievance, which advanced to arbitration. (*Id.*) IBEW alleged that allocating the vacant positions to PACE would violate the IBEW Letter Agreement because there were no "comparable" PACE-represented positions at NSC. (*Id.*)

The issue was decided in arbitration between WE Energies and IBEW. (*Id.* ¶ 21.) PACE did not participate in the arbitration. (*Id.*) The arbitrator, after a lengthy discussion interpreting the meaning of "comparable work" as used in the IBEW Letter Agreement, concluded that most of the relocated employees' positions at NSC should remain in IBEW's bargaining unit after the positions became vacant. (*Id.* ¶ 22, Ex. E.) PACE, naturally, disagreed with the arbitrator's decision, and thereafter filed its complaint in this Court seeking to vacate the arbitration decision and refer the parties to a tripartite arbitration involving IBEW, WE Energies, and PACE. IBEW and WE Energies argue that the arbitration award should stand, and the Court should not order tripartite arbitration. All three parties have filed motions for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when, construing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Rauen v. United States Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895 (7th Cir. 2003). The parties agree that there is no factual dispute. Thus, the Court will enter judgment as a matter of law.

5

**DISCUSSION**

Pursuant to § 301 of the LMRA, this Court has jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization . . . ." 29 U.S.C. § 185(a). While § 301 does not explicitly empower federal courts to enforce arbitration agreements contained in such contracts, the Supreme Court, in *Textile Workers v. Lincoln Mills*, held that § 301 grants federal courts power to compel arbitration pursuant to arbitration provisions in CBAs. 353 U.S. 448, 451. The Supreme Court reasoned that CBAs were not to be construed by state contract law, but rather by independent, federal substantive rules of interpretation. *Id.* at 451. Indeed, the Supreme Court declared that § 301 "authorizes federal courts to fashion a body of federal law" when enforcing CBAs that would account for the policies animating the LMRA. *Id.*

Subsequent to the Supreme Court's ruling in *Textile Workers*, federal courts have addressed the question of whether they have jurisdiction to compel tripartite arbitration of work jurisdiction disputes. Work jurisdiction disputes are those that arise when two unions have CBAs with the same employer, and both unions claim to represent the same job positions of that employer. Typically, these work jurisdiction disputes involve CBAs that do not explicitly provide for tripartite arbitration. Nevertheless, several federal circuits have asserted their jurisdiction and compelled tripartite arbitration, using the court's authority under § 301 to "fashion a body of federal law" to further a fair and expedient resolution of work assignment disputes. *See United States Postal Serv. v. Nat'l Rural Letter Carriers'*

6

*Ass'n*, 959 F.2d 283, 286 (D.C. Cir. 1992); *Retail, Wholesale & Dep't Store Union, Local 390 v. Kroger Co.*, 927 F.2d 275, 277-79 (6th Cir. 1991); *United States Postal Serv. v. Am. Postal Workers Union*, 893 F.2d 1117, 1120 (9th Cir. 1990); *Local No. 850, Int'l Ass'n of Machinists & Aerospace Workers v. T.I.M.E.-DC, Inc.*, 705 F.2d 1275, 1277-78 (10th Cir. 1983); *Columbia Broad. Sys., Inc. v. Am. Recording & Broad. Ass'n*, 414 F.2d 1326, 1328-29 (2d Cir. 1969).

The seminal case amongst these federal circuit decisions is *Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Association*, 414 F.2d 1326 (2d Cir. 1969) ("*CBS*"). In *CBS*, an employer brought a § 301 suit to consolidate two pending arbitrations involving two of its unions. One union demanded arbitration with the employer, disputing an assignment of work to a second union. Subsequently, the employer served a demand for arbitration on the second union regarding the same matter. The employer had CBAs with both unions, and each CBA contained expansive work assignment provisions and broad arbitration clauses. The district court ordered consolidation of the pending arbitration proceedings into one, tripartite proceeding.

The Second Circuit affirmed. *Id.* at 1329. In *CBS*, the Second Circuit first addressed whether the district court had jurisdiction to entertain the action to consolidate. Conceding that, "read literally," § 301 would not confer jurisdiction on the district court to consolidate the proceedings into a tripartite arbitration, the court noted that the Supreme Court had nonetheless held that § 301 provides federal courts "broad jurisdiction to deal with many

7

types of controversies that arise between labor and management." *Id.* at 1328 (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964)). Thus, "in line with the overall national policy of furthering industrial peace by resort to agreed-upon arbitration procedures," the Second Circuit held that the district court had jurisdiction to consolidate the two arbitration proceedings and order tripartite arbitration. *CBS*, 414 F.3d at 1328. The Second Circuit further held that the district court properly exercised its jurisdiction because both agreements had broad arbitration provisions and the second union had agreed to utilize the arbitration procedures agreed to by the employer and the other union. *Id.* at 1329.

While the Seventh Circuit has not yet ruled on a "classic one-on-one jurisdiction dispute" similar to the one faced by the Second Circuit in *CBS*, it has endorsed the reasoning and holding of *CBS*. *See Miron Constr. Co., Inc. v. I.U.O.E., Local 139*, 44 F.3d 558, 563 (7th Cir. 1995); *Laborers' Int'l Union of N. Am., Local Union No. 309 v. W.W. Bennett Construction Co., Inc.*, 686 F.2d 1267, 1273-75 (7th Cir. 1982) ("*Bennett*"). In both *Miron* and *Bennett*, the Seventh Circuit clarified that a district court's jurisdiction depended on the existence of a "contractual nexus" between the parties. *Miron*, 44 F.3d at 563; *Bennett*, 686 F.2d at 1276. That is, each union must be bound by an arbitration agreement with its employer that arguably covers work assignment disputes. *Bennett*, 686 F.2d at 1276.

In the instant case, IBEW and WE Energies argue that PACE cannot claim a contractual nexus because the PACE CBA, containing the arbitration agreement, does not provide any mechanisms for resolving work jurisdiction disputes. Only the IBEW Letter

8

Agreement, to which PACE was not a signatory, outlines how a work jurisdiction dispute is to be resolved. Given that parties must voluntarily agree to arbitrate, *see Bennett*, 686 F.2d at 1277, IBEW and WE Energies claim that the absence of any clause regarding work jurisdiction disputes in the PACE CBA forecloses this Court from asserting jurisdiction to compel tripartite arbitration.

The Court disagrees. Federal courts apply a strong presumption in favor of arbitrability. *See Miller v. Fume*, 139 F.3d 1130, 1136 (7th Cir. 1998). Thus, "any doubts concerning the scope of the arbitration clause are resolved in favor of arbitration." *Id.* While it is true that the PACE CBA does not have a work jurisdiction dispute provision, it does contain a work assignment provision. The PACE CBA provides that PACE is the "exclusive representative" of "employees performing production and maintenance work." (PFOF ¶ 10.) Whether the job vacancies at issue entail "production and maintenance work" is a central question that must be decided in order to resolve the work jurisdiction dispute between IBEW, WE Energies, and PACE. PACE's CBA also specifically provides a grievance and arbitration procedure providing for "conclusive and binding" arbitration of "differences or grievances . . . as to the meaning and application of the provisions of this contract[.]" (PFOF ¶ 13.) Given the strong presumption in favor of arbitrability, the Court construes the PACE CBA as providing for arbitration of work assignment disputes like the one it now faces with IBEW and WE Energies. Accordingly, PACE has established the requisite contractual nexus triggering this Court's jurisdiction.

9

Nevertheless, WE Energies and IBEW contend that PACE cannot claim a contractual nexus because it has not filed the requisite grievances with WE Energies to trigger the arbitration clause of the PACE CBA. The PACE CBA requires that, before a matter proceeds to arbitration, PACE must first file a grievance. Given that PACE never filed a formal grievance, WE Energies and IBEW argue that PACE is not even entitled to bipartite arbitration, let alone tripartite arbitration.

While it is true PACE has not filed a formal grievance, PACE has sufficiently triggered the arbitration clause by filing this action and seeking tripartite arbitration. The D.C. Circuit faced a similar situation, and ruled that a contractual nexus existed:

> [W]hile [the union] has not yet filed a grievance, it has sufficiently invoked its arbitration provision by seeking a temporary restraining order, moving to align itself as a plaintiff in this case, and arguing throughout the proceeding that tripartite arbitration is the proper resolution of this dispute. . . . Under these circumstances, the requisite contractual nexus is present, and the district court had the authority to compel tripartite arbitration.

*United States Postal Serv. v. Nat'l Rural Letter Carriers' Ass'n*, 959 F.2d 283, 287 (D.C. Cir. 1992) ("*Postal Service*").

This Court agrees with the D.C. Circuit's analysis in *Postal Service*. The failure to file a formal grievance is not an insuperable obstacle to the relief PACE seeks.

Because the Court has authority to compel arbitration, it has discretion to grant or deny PACE's request for tripartite arbitration. *See CBS*, 414 F.2d at 1329; *Postal Service*, 959 F.2d at 286-87. The Court's discretion will be guided by the reasoning of the Second

10

Circuit's decision in a factually similar case, *Emery Air Freight Corpation v. International Brotherhood of Teamsters, Local 295*, 185 F.3d 85 (2d Cir. 1999).

In *Emery*, an employer lost a bipartite arbitration proceeding with one of its unions, and pursuant to that arbitration decision, assigned certain work assignments to the union. A second union claimed the same work assignment and initiated another bipartite arbitration proceeding against the employer. Faced with the prospect of two potentially conflicting arbitration awards, the employer filed a § 301 suit in federal court, asking the district court to restrain the second arbitration proceeding and compel the two unions to submit to tripartite arbitration. While the district court acknowledged that it had discretion to compel tripartite arbitration, it refused to do so, and dismissed the case. *See id.* at 87.

The employer appealed the decision of the district court, arguing that once a court has concluded that it has the power to order tripartite arbitration, it may not decline to do so. *Id.* at 91. The Second Circuit disagreed, and affirmed the decision of the district court. *Id.* The Second Circuit held that the district court had discretion to deny a request for tripartite arbitration depending upon the equities of the particular circumstances. *Id.* at 91. The district court cited various reasons for its decision, including incompatible arbitration procedures in the two CBAs, the no-strike provisions in the CBAs, and the possibility that a second bipartite proceeding might not conflict with the first arbitration decision. *Id.* The Second Circuit held that the district court did not abuse its discretion and had sufficient reasons to deny the request for a tripartite proceeding. *Id.* at 92.

11

The factual circumstances in *Emery* are similar to the circumstances in the instant case. Like the CBAs in *Emery*, the IBEW CBA and the PACE CBA contain conflicting arbitration procedures, and neither union has consented to follow the procedures set forth in the other union's agreement. If the Court were to compel tripartite arbitration, neither party has proposed how an arbitration panel would be selected, given that both of the unions' CBAs provide a different mechanism for doing so. In *CBS*, one union agreed to arbitrate according to the procedures outlined in the other union's CBA. The court considered this factor favorably when deciding to consolidate the arbitration proceedings. *CBS*, 414 F.2d at 1329. Such an agreement was absent in *Emery*, and is absent here. That is one reason that this Court, like the court in *Emery*, is disinclined to compel tripartite arbitration.

Also, like the CBAs in *Emery*, both the IBEW CBA and the PACE CBA contain no-strike provisions. The PACE CBA provides that "the Union guarantees the Company . . . that there will be no strikes, stoppage of work or slowdowns that will interfere with the operations of the Company." (SOF ¶ 9, Ex. A, at 29.) Likewise, the IBEW CBA provides that "the employees . . . agree that there shall be no strikes or walkouts for any reason . . . ." (SOF ¶ 9, Ex. B, at 5.) The Court finds this factor particularly important. As discussed above, one of the main reasons courts have interpreted § 301 liberally to allow district courts jurisdiction to compel tripartite arbitrations is to promote the "national policy of furthering industrial peace." *CBS*, 414 F.3d at 1328. The no-strike provisions in both CBAs render the concern of industrial peace a nullity in these circumstances.

12

Finally, like the pending bipartite arbitration proceeding in *Emery*, a bipartite arbitration between PACE and WE Energies could produce a result harmonious with the IBEW arbitration. Like the court in *Emery*, this Court agrees that the possibility of harmonious bipartite arbitration decisions mitigates against compelling, at this time, a tripartite proceeding. Tripartite arbitration is not contemplated explicitly in either CBA, and while the Court has authority to compel a tripartite proceeding, it is disinclined to do so when there is not a sufficient reason to believe that a bipartite arbitration between PACE and WE Energies would likely result in a conflicting arbitration award.

For the foregoing reasons, therefore, the Court grants summary judgment in favor of IBEW and WE Energies, and dismisses the case.

13

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

PACE's Motion for Summary Judgment (Docket #26) is **DENIED**.

IBEW's Motion for Summary Judgment (Docket #29) is **GRANTED**.

Wisconsin Electric Power Company's and Wisconsin Electric Gas Company's Motion for Summary Judgment (Docket #30) is **GRANTED**.

The clerk is directed to enter judgment and close this case accordingly.

Dated at Milwaukee, Wisconsin this 23rd day of January, 2006.

**BY THE COURT**

s/ Rudolph T. Randa
**Hon. Rudolph T. Randa**
**Chief Judge**